

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00197-CR

_____

CHASE ERICK WHEELER, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 3
Tarrant County, Texas
Trial Court No. 1473192

Before Gabriel, Pittman, and Bassel, JJ.
Opinion by Justice Gabriel

## OPINION

Appellant Chase Erick Wheeler appeals from the trial court's denial of his pretrial motion to suppress blood-alcohol evidence seized under a warrant that was supported by an unsworn affidavit. In what Wheeler and the State both declare is an issue of first impression, we are asked to decide whether the good-faith exception to the statutory exclusionary rule allows admission of this evidence even though it was obtained in violation of the Texas Constitution's oath requirement. Under the singular facts of this case, we conclude that it does not.

## I. BACKGROUND

### A. THE ARREST

The facts surrounding Wheeler's arrest and the issuance of the search warrant are largely undisputed. On July 9, 2016, Officer Tyler Bonner, who at the time had worked for the Pantego Police Department (Pantego) for one year and two months,[1] responded to a report that a driver was asleep behind the wheel of an idling car in the drive-through lane of a fast-food restaurant. Bonner arrived, woke the driver up, and noted that he appeared intoxicated. The driver, identified as Wheeler, refused to perform any field-sobriety tests but told Bonner that he had "consumed 4 beers." Bonner arrested Wheeler and drove him to the police department to get a search warrant for Wheeler's blood after Wheeler refused to supply a sample.

---

[1]Apparently, this was Bonner's first employment as a police officer after leaving the training academy.

2

## B. THE SEARCH WARRANT

Pantego routinely prepares premade packets that include several fill-in-the-blank forms: an affidavit for a search warrant, a search warrant, an order to execute the warrant, and a return. The affidavit form includes a recital that the "undersigned Affiant, a peace officer . . ., and after first being duly sworn, on oath makes the following statements and accusations." Bonner filled out the affidavit form, supplying the probable-cause facts that he believed supported the issuance of a search warrant for a compelled sample of Wheeler's blood. These facts included that Wheeler had a moderate odor of alcohol and that his speech was slurred and confused. Bonner signed the affidavit, affirming that it was sworn by his oath, and dated the jurat on the affidavit. Bonner then gave the packet to the dispatcher who called the magistrate and electronically sent the packet to her.

The magistrate, Sara Jane Del Carmen, knew that the arrangement of Pantego's office space dictated that the requesting officer physically hand the packet documents to the dispatcher who would then electronically forward the packet. When Del Carmen received Bonner's packet, she reviewed the affidavit, determined that probable cause had been established, and electronically signed the affidavit's dated jurat and the warrant. The jurat provided: "Subscribed and sworn to before me on this _9_ day of _July_, 20_16_, by an official authorized to administer and authorize this oath pursuant to TEX. GOV'T CODE § 602.002." Del Carmen did not notice that Bonner's affidavit, unlike other affidavits she had seen from Pantego officers, did not

3

have another officer's badge number or a notary's stamp on it. Del Carmen admitted that she had signed the jurat in error because she had "missed" that Bonner's affidavit was not sworn. But at the time, Del Carmen believed probable cause for a search warrant had been established and did not see any defects in Bonner's affidavit. She electronically signed the warrant, authorizing officers to take a sample of Wheeler's blood, and electronically returned the packet to the dispatcher. The warrant included a recitation that the affiant—Bonner—"did heretofore this day subscribe and swear to said affidavit before me"—Del Carmen.

The dispatcher informed Bonner that the warrant had been signed. The warrant was executed, and Wheeler's blood draw occurred approximately one hour after his arrest. *See* Tex. Code Crim. Proc. Ann. art. 18.06. On Pantego's blood-room-procedure form, Bonner did not indicate whether the blood draw was pursuant to Wheeler's consent or a search warrant. He later did not remember why he did not circle "Search Warrant" on that form. Bonner signed the return as the affiant, but Del Carmen never signed it.[2] *See id.* art. 18.10. Wheeler's blood-alcohol content was 0.14.

---

[2]Bonner did not remember if he signed the return before or after he was informed Del Carmen had signed the warrant. Del Carmen testified that Bonner had already signed the return when she received the packet and that it was not "typical[]" for Pantego officers to sign the return before the warrant was issued. A return cannot be made by the officer until after the warrant is executed. *See* Tex. Code Crim. Proc. Ann. arts. 18.06(a), 18.10. However, these deficiencies in the return do not mandate suppression of the blood-alcohol evidence. *See id.* art. 18.10 ("The failure of an officer

## C. THE MOTION TO SUPPRESS AND APPEAL

Wheeler was charged by information with the class B misdemeanor of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a)–(b). Before trial, he filed a motion to suppress the seized blood-alcohol evidence, arguing that the warrant was invalid because it was based on an unsworn affidavit and therefore violated the United States and Texas Constitutions.[3]

At the trial court's December 19, 2017 evidentiary hearing, Bonner testified that he did not fabricate the probable-cause facts included in his affidavit. Although he had been trained at the police academy about the oath requirement for warrant affidavits, Pantego did not reinforce that he needed an oath or its equivalent administered before submitting the affidavit. In fact, he stated that he had never before sworn to a probable-cause affidavit in the fourteen months he was a Pantego officer and that he had previously applied for search warrants from Del Carmen. At the suppression hearing, Bonner admitted that he was aware of the constitutional oath requirement for search-warrant affidavits based on his prior academy training.[4] When

---

to make a timely return of an executed search warrant . . . does not bar the admission of evidence under Article 38.23 [i.e., the exclusionary rule].").

[3]Wheeler also sought suppression because of a lack of reasonable suspicion or probable cause. The trial court denied these portions of the motion, and Wheeler does not attack that denial on appeal.

[4]At the time of the hearing, Bonner was employed by the Farmers Branch Police Department. Before that and after leaving Pantego, Bonner worked for the Dalworthington Gardens Department of Public Safety.

5

Bonner was asked if an oath had been administered or if someone watched him sign the affidavit for Wheeler's warrant, Bonner stated, "Not that I remember." Bonner admitted that he never communicated directly with Del Carmen that night. But he testified that he followed what he believed to be Pantego's standard procedure in obtaining the search warrant. Bonner was familiar with oaths and understood that the probable-cause facts in his affidavit were never properly sworn. Bonner could not remember if he saw the signed search warrant, but he was not subjectively aware of any defects in his affidavit at the time and he subjectively believed he had a valid search warrant.

Del Carmen testified that she previously had seen many warrant affidavits from Pantego officers and that they ordinarily were sworn either before another officer or before a notary before being sent to her by the dispatcher. She did not notice that Bonner's affidavit was not sworn and she did not administer an oath to Bonner that night. Based on her knowledge of Pantego procedure regarding officers' handing the packet to the dispatcher to forward to her, Del Carmen believed that an attestation to the affidavit could have occurred. But she testified that based on the packet she received regarding Wheeler's warrant, there was no indication of an attestation. Del Carmen agreed that Bonner's affidavit provided no verified facts supplying probable cause for the search warrant.

The dispatcher did not testify at the hearing and was no longer employed by Pantego. The trial court took judicial notice that the dispatcher was terminated for "the creation of fictitious, racial profiling codes."

The trial court denied Wheeler's motion on January 9, 2018. In its carefully crafted order, the trial court framed the issue: "Is the good faith exception provision in Article 38.23(b) Code of Criminal Procedure applicable under these facts so that the exclusionary rule contained in Article 38.23(a) is inapplicable?" The trial court, after paying "particular attention" to the plain language of the good-faith exception in article 38.23(b), found that the unsworn affidavit was a procedural mistake, not a substantive error, that fell within the good-faith exception to article 38.23(a)'s exclusionary rule. *See* Tex. Code Crim. Proc. Ann. art. 38.23.

After pleading guilty under a plea-bargain agreement, Wheeler now appeals the trial court's denial of his pretrial motion to suppress. *See id.* art. 44.02. The trial court certified that Wheeler had the right to appeal from the trial court's suppression ruling notwithstanding that his guilty plea was the result of a plea bargain. *See* Tex. R. App. P. 25.2(a)(2)(A), (d). Wheeler now argues that because Bonner's affidavit was not sworn, the evidence seized under the subsequently issued warrant should have been suppressed because it violated the affidavit and warrant requirements found in the Texas Constitution,[5] which could not be cured by the exclusionary-rule exception

---

[5]Although Wheeler contends in passing that the search also violated his federal constitutional rights under the Fourth and Fourteenth Amendments, he substantively

7

found in the code of criminal procedure. *See State v. Villarreal*, 475 S.W.3d 784, 811–12 (Tex. Crim. App. 2014) (5-4 decision) (recognizing legislature cannot create "new exception to the warrant requirement" contrary to constitutional, guaranteed rights); *Ex parte Ainsworth*, 532 S.W.2d 640, 641 (Tex. Crim. App. 1976) (recognizing legislature cannot alter the scope of constitutional protections by statute). *See generally Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010) (recognizing Texas's exclusionary rule provides broader protections than does federal, judicially created rule); *State v. Huddleston*, 387 S.W.3d 33, 40 n.11 (Tex. App.—Texarkana 2012, pet. ref'd) (noting Texas's statutory good-faith exception more limited than federal, nonstatutory counterpart).

## II. STANDARD OF REVIEW

In general, when tasked with the review of a trial court's suppression ruling, we use a bifurcated standard of review—giving almost total deference to historical-fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor and reviewing de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App.

argues only the application of the good-faith exception to the Texas Constitution's requirements. He affirmatively states in his brief that the "federal exclusionary rule . . . has no applicability to this case" and that he "makes no argument that the blood evidence should be suppressed by operation of the federal exclusionary rule." Because Wheeler did not substantively brief the United States Constitution or the federal exclusionary rule, we will not address them. *See Merrick v. State*, Nos. 02-17-00035-CR, 02-17-00036-CR, 2018 WL 651375, at *4 (Tex. App.—Fort Worth Feb. 1, 2018, pet. ref'd).

2007). The facts presented here are undisputed, and we are presented with a question of law: Can the good-faith exception to the exclusionary rule excuse the affidavit-oath requirement found in the Texas Constitution and code of criminal procedure? Because this issue solely implicates the trial court's application of undisputed facts to the law, we review the ruling de novo and will affirm it if it is correct under any applicable legal theory. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Blaylock v. State*, 125 S.W.3d 702, 705 (Tex. App.—Texarkana 2003, pet. ref'd). Further, because Wheeler's arguments implicate the scope of the statutory exclusionary rule and its exception, our question is one of statutory construction, which is also reviewed de novo. *See McClintock v. State*, 541 S.W.3d 63, 67 (Tex. Crim. App. 2017). Finally, because the good-faith exception is just that—an exception—the State had the burden to show its applicability to justify admission of the blood-alcohol results in response to Wheeler's motion to suppress. *See* 41 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice & Procedure* § 18:28 (3d ed. 2011); *cf.* Tex. Penal Code Ann. § 2.02(b) (placing burden of proof on the State to negate any labeled exception to commission of an offense).

### III.  AFFIDAVIT AND WARRANT REQUIREMENTS

#### A.  PURPOSE OF THE OATH REQUIREMENT

The Texas Constitution provides that lawful issuance of a search warrant is dependent on three requirements: (1) a particular description of the person or thing to be searched, (2) facts establishing probable cause, and (3) supported by oath or

9

affirmation. Tex. Const. art. I, § 9. The Texas Legislature codified these requirements, including that the affidavit be under oath or by affirmation, i.e., sworn. Tex. Code Crim. Proc. Ann. art. 1.06 (tracking oath-or-affirmation language in Texas Constitution), art. 18.01(b) ("A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested."). Thus, "an oath is both constitutionally and statutorily **indispensable**" in the context of a search-warrant affidavit. *Clay v. State*, 391 S.W.3d 94, 97–98 (Tex. Crim. App. 2013) (emphasis added). To qualify as a sworn affidavit, the declaration of facts contained within the affidavit must be confirmed by oath or its equivalent. *See id.*; *Vaughn v. State*, 177 S.W.2d 59, 61 (Tex. Crim. App. 1943) (op. on reh'g) (quoting *Ex parte Scott*, 123 S.W.2d 306, 311 (Tex. 1939)).

The State concedes that Bonner was not administered an oath before he signed the affidavit. But the State asserts that the oath language in the affidavit's preamble, in the jurat, and in the warrant's preamble show that the purpose of the oath was fulfilled, allowing the affidavit to be considered sworn. The purpose of an oath "is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *Smith v. State*, 207 S.W.3d 787, 790 (Tex. Crim. App. 2006). But if "the record indicates that 'the affidavit was solemnized by other means,'" the affidavit is sufficient to support the issuance of a search warrant. *Clay*, 391 S.W.3d at 97–98 (quoting *Smith*, 207 S.W.3d at 791).

Here, there is no evidence from which it could be said that Bonner signed his affidavit with "a sense of seriousness and responsibility" or with a "sense of [his] moral duty to tell the truth." *Smith*, 207 S.W.3d at 790. At the suppression hearing, Bonner testified that he understood the meaning of the oath he took before he began his testimony but he did not state that he had that same understanding at the time he signed his affidavit. Indeed, he was not asked if that was the case. Other than his testimony that he had not falsified the affidavit facts, he did not testify that he signed the affidavit with a knowledge of its seriousness such that he would be subject to perjury. *See id.* ("When an individual swears under oath, society's expectation of truthfulness increases and the legal consequences for untruthfulness—prosecution for perjury, for example—may be severe.").

Bonner did not take an oath or otherwise attest to the affidavit facts before having the dispatcher forward the packet to Del Carmen, and Del Carmen specifically testified that she had not administered an oath to Bonner. Both agreed that they never spoke to each other that night, and Bonner testified that he had never before sworn an oath in front of anyone to procure a warrant. And both recognized that the jurat's oath recital never occurred. We cannot conclude that the oath recitations in the affidavit's and warrant's preambles or in the jurat were sufficient to consider the affidavit sworn. The evidence reflects the opposite—no oath or its equivalent occurred. Del Carmen testified that the oath statement in the warrant's preamble

11

never happened and opined that the affidavit was not sworn.[6] This uncontradicted, affirmative evidence that there was no oath or affirmation to the affidavit compels us to conclude that the oath recitations relied on by the State were false and cannot render the affidavit sworn. *See generally id.* at 790 n.13 (stating "an oath is a matter of substance, not form").

These facts distinguish this case from the cases relied on by the State to support its argument that the oath recitations can render an affidavit sworn. In *Longoria v. State*, the court recognized that although the officer testified he had not been formally sworn before signing his affidavit, he stated that he signed the affidavit "swearing that everything in it [was] true," believing that he had complied with the oath requirement, and no evidence contradicted the oath recitals in the subsequently issued warrant. No. 03-16-00804-CR, 2018 WL 5289537, at *4–6 (Tex. App.—Austin Oct. 25, 2018, no pet.) (mem. op., not designated for publication); *see also Ashcraft v. State*, No. 03-12-00660-CR, 2013 WL 4516193, at *6–7 (Tex. App.—Austin Aug. 20, 2013, no pet.) (mem. op., not designated for publication) (holding oath recitals combined with evidence another officer witnessed affiant signing affidavit rendered affidavit sworn). In *Hardy v. State*, the court of criminal appeals held that a perjury

---

[6]Del Carmen stated that because she knew an applying Pantego officer would physically hand the warrant packet to the dispatcher, she would "ordinarily, . . . have considered it attested to." But no evidence shows that Bonner attested to the affidavit to the dispatcher. Bonner testified that he had never sworn or attested to his affidavits before, and Del Carmen testified that there was no indication that Bonner attested to the affidavit in front of the dispatcher.

12

conviction did not require evidence that the affiant was actually present before the notary public at the time the oath was executed in light of the signed jurat, which stated that the affidavit was sworn to before the notary. 213 S.W.3d 916, 917 (Tex. Crim. App. 2007). But in *Hardy*, the court of criminal appeals relied on a statute applicable to perjury prosecutions that vitiated any defense based on an oath's irregularity if the document contained an oath recital, if the declarant was aware of the recital at the time he signed the document, and if the document contained a signed jurat. *Id.* (citing Tex. Penal Code Ann. § 37.07(b)). Bonner testified that he was not aware his affidavit needed to be sworn at the time he made the affidavit. Further, there is no indication in *Hardy* that there was affirmative evidence that the jurat was false as we have here.

Other courts have considered an affidavit to be sworn if there was some indication that an oath was made or if there was no evidence to contradict the oath recitals. *See Flores v. State*, 367 S.W.3d 697, 702–03 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Brent v. State*, 916 S.W.2d 34, 37–38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *cf. Smith*, 207 S.W.3d at 791–92 (holding failure to sign warrant affidavit does not invalidate warrant "if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate"). Here, the evidence was undisputed that no oath or its equivalent was made, and both Bonner and Del Carmen contradicted the oath recitals in the affidavit,

13

the jurat, and the warrant. Bonner's affidavit was not improperly sworn; it was completely unsworn.

## B. The Exclusionary Rule and Its Good-Faith Exception

### 1. Application of Exclusionary Rule

Because there was no oath or its equivalent that would render Bonner's affidavit sworn, his affidavit violated constitutional and statutory requirements. *See* Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. arts. 1.06, 18.01(b). The Texas exclusionary rule forbids the admission of evidence that was obtained "in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America," which clearly would apply to violations of the "indispensable" oath requirement. Tex. Code Crim. Proc. Ann. art. 38.23(a); *Clay*, 391 S.W.3d at 97–98; *see Longoria*, 2018 WL 5289537, at *4–6 (applying good-faith exception to facially unsworn search-warrant affidavit and concluding blood-alcohol evidence admissible because officer testified he thought he had complied with the law, believed his affidavit had been sworn, stated that he signed the affidavit "swearing that everything in it is true," and no evidence contradicted the warrant's oath recitals); 40 Dix & Schmolesky, *supra*, at § 7:21 ("The plain language of Article 38.23 makes clear that it applies to evidence obtained in violation of any provision of the Constitution of the State of Texas."); *cf. McClintock*, 541 S.W.3d at 73–74 (applying exclusionary rule's good-faith exception to evidence seized pursuant to warrant affidavit that "failed to establish probable cause" as constitutionally required). But

14

Wheeler's blood-alcohol evidence would be excepted from this exclusion if it "was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." Tex. Code Crim. Proc. Ann. art. 38.23(b); *see McClintock*, 541 S.W.3d at 74 (concluding officers' conduct was objectively "close enough" to valid in making affidavit that the subsequent search was executed in good-faith reliance on the issued warrant).

## 2. Application of Good-Faith Exception

The State contends that the good-faith exception has been applied to affidavits and warrants with other constitutional infirmities, which justifies its application to the admission of Wheeler's blood-alcohol evidence. Indeed, many sins have been forgiven by the good-faith exception as pointed out by Wheeler in his brief, leading some to suggest that its reach potentially is limitless absent evidence of a false statement in the affidavit that the affiant made knowingly, intentionally, or recklessly.[7]

---

[7]*See, e.g.*, *State v. Crawford*, 463 S.W.3d 923, 932 (Tex. App.—Fort Worth 2015, pet. ref'd) (Dauphinot, J., concurring) (op. on reh'g) ("As I understand the state of the law in Texas, once the warrant issues, the only challenge that will lie is a [lack-of-good-faith-reliance] challenge. Surely lawyers are not being put in the position of being able to challenge the admissibility of evidence obtained pursuant to a defective warrant only by attacking the integrity of the officer who swore to the affidavit."); *cf. McClintock*, 541 S.W.3d at 75 (Alcala, J., dissenting) ("Given that the plain language in Article 38.23(b) requires the existence of probable cause for the exception in that portion of the statute to apply, and given this Court's former determination that this search warrant was issued in the absence of any probable cause under a correct application of the law, I would apply the general rule in Article 38.23(a) and hold that the evidence must be suppressed."); *Simmons v. State*, 7 S.W.2d 78, 79 (Tex. Crim. App. 1928) (holding in case decided before good-faith exception enacted, search-warrant affidavit based only on information and belief of affiant, with no supporting facts or

15

The court of criminal appeals has clarified that article 38.23's good-faith exception applies if the prior law-enforcement conduct was close enough to "the line of validity" such that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct. *McClintock*, 541 S.W.3d at 72–73 (quoting and relying on *United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014)).

Under the clear language of the good-faith exception, Wheeler's blood-alcohol evidence would have been admissible notwithstanding the absence of an "indispensable" oath if (1) Bonner acted in objective good-faith reliance on the warrant, (2) Del Carmen was a neutral magistrate, and (3) the warrant was based on probable cause. *See* Tex. Code Crim. Proc. Ann. art. 38.23(b); *McClintock*, 541 S.W.3d at 67; *Clay*, 391 S.W.3d at 97–98. Wheeler does not dispute that Del Carmen was neutral or that Bonner's unsworn affidavit facts established probable cause for the issuance of a warrant.[8] What Wheeler disputes is whether Bonner acted in objective

---

circumstances, subject to exclusionary rule); *State v. Hill*, 484 S.W.3d 587, 592–93 (Tex. App.—Austin 2016, pet. ref'd) (recognizing limited nature of article 38.23(b) and holding good-faith but incorrect reliance on statute or appellate precedents not included in exception, which applies only to good-faith reliance on warrant).

[8]To the extent Wheeler argues that the warrant was in fact not issued because of the lack of an affidavit oath, we disagree. Issuance has been defined as occurring when "a neutral magistrate finds probable cause to issue the warrant and signs the accompanying affidavit." *White v. State*, 989 S.W.2d 108, 110 (Tex. App.—San Antonio 1999, no pet.). Other than a passing reference to Del Carmen's illegible signature, Wheeler does not challenge these elements for issuance. And Del Carmen

16

good-faith reliance on the issued warrant given that the exclusionary rule's purpose is to deter police misconduct. *See Brick v. State*, 738 S.W.2d 676, 679 n.5 (Tex. Crim. App. 1987); *Self v. State*, 709 S.W.2d 662, 668 (Tex. Crim. App. 1986); *Flores*, 367 S.W.3d at 697; *Brent v. State*, 916 S.W.2d 34, 38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

Here, Bonner testified that he had been trained on the oath requirement for search warrants but that when he began working for Pantego, that concept was not reinforced. Thus, he never swore to any search-warrant affidavits while working for Pantego for fourteen months. He subjectively believed that not swearing to affidavits was Pantego's standard procedure. Del Carmen testified, however, that it was normal procedure for Pantego officers to produce sworn affidavits for her review in determining probable cause. Indeed, Del Carmen "missed" that Bonner's affidavit lacked an oath or its equivalent because such affidavits from Pantego ordinarily contained either another officer's badge number or a notary stamp. Bonner's testimony was that he had been trained on the oath requirement and its constitutional underpinnings but that he subjectively believed that it was not necessary based on his incorrect assumption that Pantego did not require sworn affidavits to procure a search warrant. Thus, Bonner either wrongly assumed that Pantego officers did not submit sworn affidavits and followed suit notwithstanding his training to the contrary or he

testified at the suppression hearing that she electronically signed the warrant and the jurat.

17

repeatedly ignored the oath requirement. Bonner's subjective understanding of Pantego policy is irrelevant. *See Flores*, 367 S.W.3d at 703. No objectively reasonable officer could believe that sworn affidavits are not required in seeking search warrants. Indeed, they are "indispensable." *Clay*, 391 S.W.3d at 97–98. Bonner's submission of an unsworn affidavit was not close to the line of validity; therefore, an objectively reasonable officer preparing such an affidavit could not have believed that the subsequent warrant was not tainted by the complete absence of this constitutional and statutory requirement. *See McClintock*, 541 S.W.3d at 73. Because Bonner's failure to swear to the truth of his affidavit facts is a long-distance call away from the line of validity, he could not have acted in good-faith reliance on the issued warrant. *Cf. id.* at 74 (holding because constitutionality of drug-dog sniffs was close to the line of validity at the time of search, an objectively reasonable officer would have believed that his affidavit was not tainted by unconstitutional conduct, rendering the evidence admissible under the good-faith exception based on the officer's good-faith reliance on the issued warrant).

## IV. HARM

Because the trial court erred by denying Wheeler's motion to suppress the blood-alcohol evidence, we must determine whether that denial harmed Wheeler. *See Marcopoulos v. State*, 548 S.W.3d 697, 707 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Because this was error of a constitutional dimension, we must reverse the trial court's resulting judgment unless we determine beyond a reasonable doubt that the

18

denial did not contribute to Wheeler's decision to plead guilty. *See* Tex. R. App. P. 44.2(a); *Bonsignore v. State*, 497 S.W.3d 563, 573 (Tex. App.—Fort Worth 2016, pet. ref'd); *Forsyth v. State*, 438 S.W.3d 216, 225 (Tex. App.—Eastland 2014, pet. ref'd).

We do not have a reporter's record from the plea proceeding, but Wheeler's guilty plea standing alone is not enough to uphold his conviction. *See Marcopoulos*, 548 S.W.3d at 707 (citing Tex. Code Crim. Proc. Ann. art. 1.15). The blood-alcohol evidence, however, was enough to support his guilty plea. This evidence could have given the State leverage in its plea negotiations. Wheeler pleaded guilty only after the trial court denied his motion to suppress, indicating that the trial court's denial was a factor in his decision to plead guilty. As such, harm is established. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010) (op. on reh'g); *Kraft v. State*, 762 S.W.2d 612, 613–14 (Tex. Crim. App. 1988).

## V. CONCLUSION

We conclude that Bonner's affidavit was unsworn, rendering the evidence collected based on the executed search warrant subject to exclusion under the exclusionary rule. And although the good-faith exception applies even to an infirmity under the Texas Constitution, we cannot apply it under the singular and unusual facts of this case. Bonner was taught and had knowledge of the oath requirement yet repeatedly relied on his subjective but invalid belief that Pantego's procedures allowed for unsworn search-warrant affidavits. Bonner was not acting in objective good faith reliance on the issued warrant. Because the good-faith exception does not apply to

19

render the seized evidence admissible, the exclusionary rule requires that any evidence seized pursuant to the issued search warrant be suppressed.  The trial court's denial of Wheeler's motion to suppress was in error, and we cannot conclude beyond a reasonable doubt that it did not play a role in Wheeler's decision to plead guilty.  We sustain Wheeler's issue, reverse the trial court's January 9, 2018 order denying Wheeler's motion to suppress, reverse the trial court's subsequent judgment, and remand to that court for further proceedings consistent with this opinion.  *See* Tex. R. App. P. 43.2(d), 43.3(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Publish

Delivered:  March 21, 2019