

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00237-CR

THE STATE OF TEXAS, APPELLANT

V.

MARK HODGES, APPELLEE

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2018-493,664, Honorable Drue Farmer, Presiding

January 8, 2020

OPINION

Before QUINN, C.J. and PIRTLE and DOSS, JJ.

The State asks us if an affidavit is an affidavit when no one administered an oath to the affiant who signed it. The trial court said it was not and granted the motion of Mark Hodges to suppress evidence involuntary obtained upon execution of a warrant permitting a blood draw. The affidavit in question was used to obtain the warrant. It was signed by Officer One at the direction of Officer Two, who then signed the jurat. Both testified at the suppression hearing that no one administered any type of oath to Officer One. Nor did the magistrate to whom they presented the affidavit and warrant application administer

any oath to assess the truthfulness of Officer One's statements. The State argues that the affidavit nonetheless complied with statute because 1) the affidavit's preamble said that "[t]he undersigned Affiant, being a Peace Officer . . . and being duly sworn, **on oath** makes the following statements . . ." and 2) Officer One testified that he believed himself to be under oath due to the foregoing passage and knew he "could be in legal jeopardy if everything in [the affidavit] wasn't true[.]" (Emphasis added). We affirm.

Our analysis begins with observing that the standard of review is abused discretion. It obligates us to view the evidence in the light most favorable to the trial court's ruling, afford almost complete deference to a trial court's express or implied findings of historical fact, and consider *de novo* the application of the law to those facts. *Marcopoulos v. State*, 538 S.W.3d 596, 600 (Tex. Crim. App. 2017).

Next, we turn to article 18.01(b) of the Code of Criminal Procedure. It states that no search warrant shall issue unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause "does in fact exist for its issuance." TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2019). So too does it say that a "sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." *Id.* According to our Court of Criminal Appeals in *Clay v. State,* 391 S.W.3d 94 (Tex. Crim. App. 2013), "before a written statement in support of a search warrant will constitute a 'sworn affidavit,' the necessary oath must be administered 'before' a magistrate or other qualified officer." *Id.* at 99. Such has been true "for the better part of a hundred years." *Id.* Implicit in the words "must be administered" is the requirement that someone administer an oath before the writing becomes a valid "sworn affidavit."

2

Progress and developing technologies have caused our Court of Criminal Appeals to adapt its edict in certain respects. For instance, an oath may now be administered over the telephone. *Id.* Yet, neither our research nor the authority cited by the State revealed an opinion from the high court dispensing with the almost 100-year-old rule that "an oath must be administered" by a magistrate or qualified officer to make a document an affidavit. It may have come close in its earlier opinion of *Vaughn v. State*, 146 Tex. Crim. 586 (1943), where no formal oath was administered to the affiant.

Yet, in *Vaughn,* the court upheld the affidavit while making several significant observations. The first was that statute did not prescribe any particular form of oath. *Id.* at 589. The second was that an oath is any form of attestation signifying the affiant is bound in conscience to perform an act faithfully and truthfully. *Id.* The third was that the words comprising the alleged oath suffice if a charge of perjury "might have been predicated" on them if false statements appeared in the affidavit. *Id.* The fourth was, not only that the magistrate (i.e., justice of the peace) to whom the affidavit and warrant application were presented asked the affiant "if the facts set forth in said affidavit were true and the witness replied that such facts were true to the best of his knowledge and belief," but also that the witness understood he "was taking an oath" at the time. *Id.* at 588. So, it may be that no formal oath was administered in *Vaughn*. Nevertheless, a magistrate actually inquired into the truthfulness of the statements within the affidavit, and the affiant understood he was taking an oath when inquiry was made.

The circumstances before us have no one with authority to administer an oath actually administering one in any way, shape, or form. Nor did anyone with authority to administer an oath actually inquire into the truthfulness of Officer One's statements within

3

the purported affidavit. These alone distinguished the circumstances here from those in *Vaughn*.

And, though Officer One testified that he knew he was under oath when signing the affidavit, he said so while also acknowledging that he knew no one had administered any oath. That suggests he somehow placed himself under oath. Yet, the officer did not testify about the content of the supposed oath he purportedly operated under. Nor did he testify that the oath obligated him to acknowledge the truthfulness of what he said in the affidavit. In fact, nowhere in the body of the affidavit did he actually attest that the representations therein were true or correct. While such language appeared in the jurat signed by Officer Two, though, it was preceded by the phrase "after being sworn by me." That is, it read that, "on this day personally appeared Affiant [Officer One] and ***after being sworn by me***, affirmed the statements contained therein are true and correct to the best of his/her knowledge." (Emphasis added). "[A]fter being sworn by me" tells the reader that Officer Two somehow swore in or otherwise administered an oath to Officer One. Yet, the latter conceded at the suppression hearing that Officer Two merely directed him to sign the affidavit. Officer One was never "sworn by" Officer Two. Nor was he asked by Officer Two if the statements were true and correct. Simply put, these representations appearing in the jurat and confirmed by Officer Two's signature were false.

This leaves us to wonder whether the type of oath Officer One purportedly operated under in his mind was the type sufficient to satisfy *Vaughn*. Such an oath would be one exposing the affiant to charges of perjury if his representations proved false. As the *Vaughn* court said, in "perjury cases, the rule is that there is a valid oath sufficient to form the basis of a charge of perjury when there is some form of an unequivocal and

4

present act, in the presence of the officer authorized to administer the oath, whereby the affiant consciously takes on himself the obligation of an oath." *Vaughn*, 177 S.W.2d at 60. An "unequivocal and present act" refers to conduct. Adding that to the passage "whereby the affiant consciously takes on himself the obligation of an oath," we read *Vaughn* to require, at the very least, the affiant to visually manifest through conduct his intent to be truthful. Officer One 1) having not verbally taken an oath affirming the truthfulness of his statements, 2) having not actually been asked in some way by anyone if the statements were true and correct, and 3) having not personally represented in or outside the affidavit that the statements were true, we are left speculating on the nature of the visible conduct in which Officer One engaged to manifest his intent to be truthful. We are left to wonder how the oath he allegedly operated under in his own mind would place him within the scope of *Vaughn*'s concept of perjury. Surely, his participation in the execution of an affidavit where Officer Two falsely said Officer One was "sworn by me" does not satisfy the requisites.

The trial court noted other peculiarities in the evidence before it. For instance, in its fact finding number 4, it expressed as follows: "Despite the fact that the affidavit for search warrant says, 'The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations,' at no time was Officer [One] actually sworn to the allegations contained in his affidavit." In finding of fact number 5 it stated the following: "Despite the fact that the affidavit for search warrant says, 'Before me, an official authorized to administer and authorize this oath . . . on this day personally appeared Affiant and after being sworn by me, affirmed the statements contained therein are true and correct to the best of his/her knowledge,'

5

at no time did Officer [Two] administer any such oath to Officer [One]." To that we add finding of fact number 6 wherein the court said that, "[i]n fact, Officer [One] testified that he is not required to take an oath prior to submitting an affidavit for a search warrant to a magistrate, and Officer [Two] testified it is not his practice to administer an oath to an affiant seeking a search warrant for a suspect's blood in a driving while intoxicated investigation."

Each finding suggests a concern the trial court had with what the officers were saying, both in the affidavit and their live testimony. The officers seemed to say one thing in the affidavit only to contradict it through their live testimony. From that concern and the findings illustrating it, we cannot say that the credibility of the officers played no part in the trial court's decision. The opposite seems true. Indeed, one could question the credibility of Officer One's testimony about believing he was under oath while at the same time believing that an oath was unnecessary. And, resolution of those credibility issues fell within the bailiwick of the trial court.[1] And, in the trial court granting the motion to suppress, it would be appropriate for us to imply that the trial court doubted the veracity of the officers' testimony. *See Powell v. State*, No. 03-10-00728-CR, 2011 Tex. App. LEXIS 7601, at *12–13 (Tex. App.—Austin Sept. 14, 2011, no pet.) (mem. op., not designated for publication) (where explicit fact findings were executed and stating that in the absence of explicit findings on a contested issue, we assume the trial court made

[1] These credibility issues, the manner of their resolution, and our obligation to defer to the way they were resolved by the trial court tend to rebut the State's argument that the standard of review at bar is *de novo*. We are not required to assume everything the two witnesses said was accurate. Nor was the trial court. Instead, the trial court was free to disbelieve aspects of their testimony, and we must defer to that. *Sullivan v. State*, No. 07-16-00227-CR, 2017 Tex. App. LEXIS 7810, at *2–3 (Tex. App.—Amarillo Aug. 16, 2017, no pet.) (mem. op, not designated for publication).

6

those implied findings necessary to support its ultimate ruling as long as they are supported by the record).

In short, we are bound to follow precedent from the Court of Criminal Appeals. It said that before a written statement in support of a search warrant constitutes a "sworn affidavit," the requisite oath must be administered before a magistrate or other qualified officer. *Clay*, 391 S.W.3d at 99. It may have occasion to change that edict given its grant of the petition for discretionary review in *Wheeler v. State*, 573 S.W.3d 437 (Tex. App.—Fort Worth 2019, pet. granted).[2] Yet, we must leave to the Court of Criminal Appeals the decision whether to deviate from *Clay* and other of its edicts, such as "it is that act of swearing . . . that is essential." *See Smith v. State*, 207 S.W.3d 787, 792 (Tex. Crim. App. 2006). And, though some Texas intermediate appellate courts have attempted to dispense with the need for an administered oath, *see, e.g., Ashcraft v. State*, No. 03-12-00660-CR, 2013 Tex. App. LEXIS 10402, at *16–21 (Tex. App.—Austin Aug. 20, 2013, no pet.) (mem. op., not designated for publication) (affirming the trial court's decision to deny suppression even though no oath was administered), they are not the court with final say.[3] It is the former and its declarations that we must follow.

---

[2] In *Wheeler*, 573 S.W.3d at 443, the intermediate court of appeals invalidated an affidavit executed by an affiant to whom no one administered an oath. That it, like the affidavit at bar, contained verbiage in its preamble about being sworn to and under oath mattered not. According to the court, "[t]his uncontradicted, affirmative evidence that there was no oath or affirmation to the affidavit compels us to conclude that the oath recitations relied on by the State were false and cannot render the affidavit sworn." *Id.*

[3] One circumstance distinguishing *Ashcraft* from our case is the apparent absence of a misrepresentation by the person executing the jurat. That individual did not falsely state that she administered an oath to the affiant. Nor do the facts recited in the opinion reveal the peculiarities in witness testimony apparently observed by the trial court here; thus, witness credibility may not have been in play in *Ashcraft*.

7

The State's issue on appeal is overruled.  The trial court had reasonable evidentiary basis to conclude that the search warrant permitting a blood draw was void because it was founded on an unsworn affidavit.  Thus, we affirm its order granting the motion to suppress.

Brian Quinn
Chief Justice

Publish.