

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0388-19
---

**CHASE ERICK WHEELER, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY
---

SLAUGHTER, J., delivered the opinion of the Court in which RICHARDSON, YEARY, NEWELL, WALKER, and MCCLURE, JJ., joined. HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEEL, J., joined.

## O P I N I O N

In applying for a blood-alcohol search warrant, a police officer submitted an unsworn probable-cause affidavit. Finding that the affidavit articulated probable cause but not realizing that it was unsworn, the magistrate signed and returned the search warrant. The same police officer then executed that search warrant. There is no question that the officer's failure to take the oath

and swear to his probable-cause affidavit was improper. The question is whether despite this defect and assuming a valid warrant issued, the good-faith exception to the Texas exclusionary rule[1] applies such that the blood-alcohol evidence is admissible. We hold that, under the facts of this case, the good-faith exception is inapplicable and the evidence is subject to suppression. We agree with the court of appeals that the officer in this case was objectively unreasonable in executing a search warrant he knew was unsupported by a sworn probable-cause affidavit, such that he cannot be said to have acted in objective good-faith reliance upon the warrant. Therefore, we affirm the judgment of the court of appeals.

## I.      Background

The facts of this case are largely undisputed. Early on the morning of July 9, 2016, Officer Tyler Bonner, the sole officer on duty for the Pantego Police Department, arrested Appellant, Chase Erick Wheeler, for driving while intoxicated. Wheeler refused to submit to field sobriety tests and also refused a blood or breath test. As such, Bonner took Wheeler to the police department to obtain a search warrant for Wheeler's blood.

### A.      The search warrant

In applying for the search warrant, Bonner used preprinted, fill-in-the-blank/check-the-box forms for the probable-cause affidavit, search warrant, return, and an order for assistance. The probable-cause affidavit form included statements indicating that an oath was required and must be sworn before another person.[2] The jurat provided: "Subscribed and sworn to before me on this

---

[1] *See* TEX. CODE CRIM. PROC. art. 38.23(a), (b).

[2] The very first line of the probable-cause affidavit form contains a recital that the "undersigned Affiant, a peace officer under the laws of the State of Texas, and after first being duly sworn, on oath makes the following statements and accusations."

9 day of July, 2016, by an official authorized to administer and authorize this oath pursuant to TEX. GOV'T CODE § 602.002." Despite the recital in the jurat, Bonner never swore to the affidavit before anyone. Instead, he merely signed the affidavit on the line immediately above the jurat labeled "affiant," filled in the blanks for the date in the jurat, and gave it to the dispatcher, leaving the signature for the jurat blank.[3] The dispatcher then electronically submitted the documents to the magistrate, Sara Jane Del Carmen. Del Carmen, not realizing that the affidavit was unsworn, signed the jurat and the search warrant.[4] Bonner then executed the warrant.[5]

### B.      Motion to Suppress

After being charged with driving while intoxicated, Wheeler filed a motion to suppress the blood-alcohol evidence. He argued that because Bonner's affidavit was not sworn under oath as required by the Texas Constitution and Code of Criminal Procedure,[6] it must be excluded pursuant

---

[3] The signature blank for the jurat was labeled "Judge / Peace Officer / Notary."

[4] The search warrant also contained language indicating that Bonner had sworn to his probable-cause affidavit before Del Carmen, stating, "Whereas, the Affiant, whose name appears on the Affidavit attached hereto is a peace officer under the laws of Texas and did heretofore this day subscribe and swear to said affidavit before me . . . ."

[5] Notably, it is unclear from the record whether Del Carmen ever actually sent the signed warrant to the police department. Although Del Carmen testified that she ordinarily would have electronically uploaded the signed warrant to the "Dropbox" used to transfer documents to the police department, she did not have any personal recollection of doing so in this instance. Furthermore, by the time of the criminal proceedings in this case, the Pantego Police Department did not have in its possession a printed or electronic copy of the signed search warrant. The District Attorney's office had to contact Del Carmen to ask for a copy of the signed warrant, which she provided. Officer Bonner testified that the ordinary procedure upon receiving a signed search warrant in the Dropbox was for the dispatcher to print out a copy and give it to the executing officer. Officer Bonner could not recall if he ever saw a signed search warrant, instead asserting that he had been verbally notified by the dispatcher that the signed warrant had been received. Thus, given the circumstances, it appears likely that Officer Bonner executed the search warrant without having seen a signed copy of it, either because Del Carmen never sent it or the dispatcher did not print it out for the department's files.

[6] See TEX. CONST. art. I, § 9 ("[N]o warrant to search any place, or to seize any person or thing,

to the Texas Exclusionary Rule in Code of Criminal Procedure Article 38.23(a). At the hearing on Appellant's motion to suppress, Bonner admitted that he did not swear an oath before Magistrate Del Carmen or anyone else. But, he claimed that he believed an oath was not required pursuant to Pantego Police Department policy. Bonner testified that in the fourteen months he had been employed with the Pantego Police Department, he had not sworn to a single probable-cause affidavit. Bonner also stated that he understood that the facts in his affidavit were not properly sworn but that he was not aware of any defects in the warrant and believed it to be valid at the time of execution.

Additionally, Bonner admitted that in the police academy (from which he had graduated only fourteen months prior to this incident) he learned about the Constitution and laws pertaining to searches and seizures. He stated that he received specific training on the requirements of the U.S. Constitution's Fourth Amendment and the Texas Constitution's Article I, Section 9. He also acknowledged that as part of this training, he was instructed that officers must swear an oath before a qualified individual when submitting a probable-cause affidavit to obtain a search warrant.

Del Carmen also testified at the motion to suppress hearing. She indicated that in her experience as a magistrate working with the Pantego Police Department, an officer typically would swear the oath in front of another officer. The officer accepting the oath would write his/her badge number next to the signature line on the probable-cause affidavit to indicate that it had been sworn. In this case, Del Carmen failed to realize that there was no officer's badge number or notary's

---

shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."); TEX. CODE CRIM. PROC. arts. 1.06 (codifying requirements of Texas Constitution in Article I, § 9); 18.01(b) ("A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested.").

stamp on Bonner's affidavit, thus she signed the warrant even though the affidavit was unsworn. Del Carmen acknowledged that she was mistaken in signing the jurat and warrant based on the unsworn probable-cause affidavit. But at the time she believed Bonner's affidavit established probable cause and did not notice any defects in the affidavit.

After hearing the evidence, the trial court denied the motion, stating that this situation fell within the good-faith exception to the exclusionary rule under Texas Code of Criminal Procedure Article 38.23(b). Based on the denial of his motion to suppress, Appellant pleaded guilty and then appealed the trial court's ruling.

### C.      Court of Appeals

The court of appeals reversed the trial court's denial of Appellant's motion to suppress. *Wheeler v. State*, 573 S.W.3d 437, 446 (Tex. App.—Fort Worth 2019). The State had argued on appeal that the oath recitation in the affidavit's and warrant's preambles were sufficient to support a finding that the oath requirement had been satisfied. The court of appeals, however, disagreed. It reasoned that the evidence failed to show that Bonner signed the affidavit with "'a sense of seriousness and responsibility' or with a 'sense of [his] moral duty to tell the truth,'" such that it could not find that the purposes of the oath had been satisfied. *Id*. at 443 (quoting *Smith v. State*, 207 S.W.3d 787, 790 (Tex. Crim. App. 2006)). This, coupled with the affirmative evidence from Del Carmen and Bonner that no oath or its equivalent actually occurred, foreclosed a finding that the oath requirement had been satisfied. *Id.* at 443-44. Thus, the court of appeals held the warrant was defective and proceeded to consider whether the good-faith exception applied. In concluding that it did not, the court reasoned that Officer Bonner was objectively unreasonable in relying on a warrant he knew was based on an unsworn affidavit. *Id.* at 446. Relying primarily on this Court's decision in *McClintock v. State*, the court of appeals explained:

> No objectively reasonable officer could believe that sworn affidavits are not required in seeking search warrants. Indeed, they are "indispensable." Bonner's submission of an unsworn affidavit was not close to the line of validity; therefore, an objectively reasonable officer preparing such an affidavit could not have believed that the subsequent warrant was not tainted by the complete absence of this constitutional and statutory requirement. Because Bonner's failure to swear to the truth of his affidavit facts is a long-distance call away from the line of validity, he could not have acted in good-faith reliance on the issued warrant.

*Id.* (citing *Clay v. State*, 391 S.W.3d 94, 97-98 (Tex. Crim. App. 2013); *McClintock v. State,* 541 S.W.3d 63, 73 (Tex. Crim. App. 2017)).

After determining that the trial court had erred in denying Appellant's motion to suppress, the court of appeals performed a harm analysis, found the error harmful, and reversed and remanded the case back to the trial court. *Id.* The State then filed a petition for discretionary review with this Court, which we granted on a single ground to consider the court of appeals' conclusion that the good-faith exception was inapplicable.[7]

## II.    Analysis

Under the Texas Exclusionary Rule, evidence obtained in violation of any provision of state or federal law cannot be used at trial in a criminal prosecution.[8] There is, however, an exception to this exclusionary rule for evidence "obtained by a law enforcement officer acting in

---

[7] The State's petition for discretionary review presented two grounds:

    (1) Is an affidavit considered sworn if the affiant testifies that he did not swear to the affidavit in front of a person authorized to administer oaths, but the affidavit itself contains oath-affirming language?

    (2) Can an officer act in objective good faith by relying on the magistrate's approval of a warrant that is defective in form?

We granted review only as to the second ground regarding the proper application of the good-faith exception to this scenario. We limit our analysis in this opinion accordingly.

[8] *See* TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX. CODE CRIM. PROC. art. 38.23(b). The exception plainly requires objective, rather than subjective, good-faith reliance upon a search warrant. We agree with the court of appeals that, applying this objective standard to the facts here, this requirement was not met because no objectively-reasonable officer would execute a search warrant knowing that it was procured through an unsworn probable-cause affidavit. Accordingly, the good-faith exception does not apply and the statutory exclusionary rule prohibits admission of the blood evidence that was obtained in violation of Texas law.

### A. A sworn probable-cause affidavit is a critical requirement under Texas law.

One of the most fundamental tenets of search and seizure law is that a search warrant must be supported by a probable-cause affidavit that is sworn "by oath or affirmation." TEX. CONST. art. I, § 9. This oath or affirmation requirement is so critical that our Legislature codified it numerous times in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 1.06 ("No warrant to search any place or to seize any person or thing shall issue without . . . probable cause supported by oath or affirmation."); art. 18.01(b) ("A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested."); art. 18.01(b-1)(1) ("The magistrate may examine an applicant for a search warrant . . . [but that] person must be placed under oath before the examination . . ."); art. 18.01(c) (stating that a search warrant may not be issued under Article 18.02(a)(10) unless the "sworn affidavit required by Subsection (b) sets forth sufficient facts to establish probable cause"); art. 18.01(f) (same, with respect to warrants issued under Article 18.021); art. 18.01(g) (same, with respect to warrants issued under Article 18.02(a)(12)). Thus, it is well established under Texas law that a search warrant cannot properly issue without a probable-cause affidavit made under oath. "An oath is any

form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully." *Vaughn v. State*, 146 Tex. Crim. 586, 589, 177 S.W.2d 59, 60 (1943). "The difference between an affidavit and an oath is that an affidavit consists of a statement of fact, which is sworn to as the truth, while an oath is a pledge." *Id.* (citing 39 Am. Jur. 494). Texas law has always required that the oath must be made "before" or in the presence of another to convey the solemnity and critical nature of being truthful. *See Clay v. State*, 391 S.W.3d 94, 98–99 (Tex. Crim. App. 2013) ("[T]his Court has held for the better part of a hundred years that, before a written statement in support of a search warrant will constitute a 'sworn affidavit,' the necessary oath must be administered 'before' a magistrate or other qualified officer.").

The oath requirement is for good reason. After all, in a probable-cause affidavit, the police officer is asking that the government be allowed to invade someone's constitutional right to privacy. It is not too much to ask that the officer swear before another that he or she is telling the truth about the necessity of such a violative intrusion. *See id.* at 100 ("That the affidavit must be sworn to fulfills the constitutional requirement that it be executed under oath or affirmation so as 'to impress upon the swearing individual an appropriate sense of obligation to tell the truth.'"). Thus, while we have recognized that certain types of procedural irregularities may not affect the validity of a search warrant, we have been unwavering in emphasizing that the oath requirement is essential. *See Smith*, 207 S.W.3d at 792 (upholding validity of warrant where affiant failed to sign affidavit; "Although the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential."); *Clay*, 391 S.W.3d at 97 (upholding warrant where affidavit was sworn out telephonically and the magistrate recognized the officer's voice, but emphasizing that "an oath is both constitutionally and statutorily indispensable . . ."). Thus, an

officer's failure to take the oath and swear to the facts of his probable-cause affidavit renders defective any search warrant issued on the basis of the unsworn probable-cause affidavit. If the warrant still validly issues in spite of this defect,[9] then the question becomes whether the good-faith exception applies to allow the admissibility of the improperly-obtained evidence.

> **B.      The good-faith exception is inapplicable here because the officer did not act in *objective* good faith.**

Given the foregoing law that establishes the critical nature of a sworn probable-cause affidavit to support issuance of a search warrant, we agree with the conclusion reached by the court of appeals that the statutory good-faith exception is inapplicable here. To justify application of the exception, Article 38.23(b) plainly requires that an officer act in objective, not merely subjective, good faith. TEX. CODE CRIM. PROC. art. 38.23(b) (requiring that the "law enforcement officer act[] in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause" for application of the exception). Thus, determining whether Officer Bonner acted in objective good faith requires us to examine whether a reasonable police officer in Officer Bonner's position would have believed the warrant was valid. *McClintock,* 541 S.W.3d at 73 (determining whether the good-faith exception applies requires a court to focus on what an "objectively

---

[9]  Appellant has not argued that the lack of an oath or affirmation prevented the search warrant from ever issuing, such that the good-faith exception is categorically inapplicable. *See* TEX. CODE CRIM. PROC. art. 38.23(b) (good-faith exception applies to officer acting "in objective good faith reliance upon a warrant *issued* by a neutral magistrate based upon probable cause") (emphasis added). Instead, Appellant focuses his arguments on the question of whether the officer's conduct was objectively reasonable. Accordingly, we do not consider, as we have in other cases, whether the defect at issue prevented the warrant from technically issuing such that the good-faith exception could not apply under its plain terms. *See, e.g., Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (considering and rejecting argument that lack of magistrate's signature on arrest warrant prevented the warrant from ever issuing such that good-faith exception could not apply; totality of the record reflected that the defect was a result of inadvertent error by the magistrate and warrant was otherwise supported by probable cause, thus the warrant had "*issued* for purposes of the good faith exception of article 38.23(b)").

reasonable officer" would have believed about whether the warrant was valid at the time of its execution); *see also Flores v. State,* 367 S.W.3d 697, 703 (Tex. App.—Houston [14th Dist.] 2012) (stating that courts must "assess the objective—not subjective—good faith of the officer executing the warrant").

As legal scholars have noted, courts (including this Court) have frequently overlooked the statutory language requiring that an officer act in *objective* good faith. *See* George E. Dix & John M. Schmolesky, 40 Tex. Prac., Criminal Practice & Procedure § 7:69 (3d ed.) ("Article 38.23(b) should be required as demanding that the officer's conduct meet a requirement of objective reasonableness. Amazingly, however, the case law makes little reference to such a requirement, has not enforced it, and has sometimes failed to discuss it when the circumstances would seem to demand its consideration."). This Court, however, addressed this issue recently in *McClintock*, 541 S.W.3d at 72-73.

In *McClintock*, we considered a situation in which a police officer had used a drug-detection dog to conduct a warrantless dog sniff outside the door of a defendant's residence. *Id.* at 65. The officer then referred to the dog sniff evidence in his probable-cause affidavit and used the evidence to obtain a warrant to search the residence, leading to the discovery of drugs. *Id.* Later, while McClintock's drug conviction was pending on appeal, the Supreme Court decided *Jardines v. Florida*, in which it held that use of a drug-detection dog within the curtilage of a residence constitutes a search for which a search warrant must be obtained. 569 U.S. 1, 11-12 (2013). In spite of this holding that undermined the legality of the methods used to establish probable cause in McClintock's case, we nevertheless held that the evidence was not subject to suppression by applying the statutory good-faith exception in Article 38.23(b). We explained that, where an officer's conduct is "'close enough to the line of validity' that an objectively reasonable officer

preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct," then the good-faith exception may apply to exempt the evidence from exclusion, notwithstanding the underlying constitutional violation. *McClintock,* 541 S.W.3d at 73. On the other hand, we recognized that "[a]n officer who has included information in a search warrant affidavit that he knows—*or should know*—to be illegally obtained cannot be said, we think, to have acted in good-faith reliance upon any warrant that may issue that depends for its probable cause upon that tainted information." *Id.* at 72 (emphasis added). Finding that the officer's conduct in *McClintock* was close enough to the line of validity to be objectively reasonable, we held the evidence was exempted from suppression, noting that doing so was entirely consistent with the language of Article 38.23(b). *Id.* at 73-74. *McClintock* thus solidified that it is the *objective* reasonableness of the officer's conduct, based on the facts and circumstances he knows at the time, that dictates whether the statutory good-faith exception applies. The officer's *subjective* intentions or beliefs about whether his conduct was lawful or reasonable are irrelevant under the statutory terms.

Both the State and dissenting opinion contend that *McClintock* is factually distinguishable and thus its reasoning is inapplicable to these circumstances. With respect to this contention, we observe that *McClintock* is at its core a case about the proper statutory interpretation of Article 38.23(b).[10] As such, although our analysis in *McClintock* was necessarily focused on determining whether the good-faith exception applied to the distinct facts at issue there, our statutory analysis was in no way limited to those facts. Rather, our analysis of the statutory requirements giving rise

---

[10] Indeed, the very first sentence in *McClintock* states, "This case involves the proper construction of Article 38.23(b) of the Texas Code of Criminal Procedure, the statutory good-faith exception to our statutory exclusionary rule." *McClintock*, 541 S.W.3d at 64.

to a finding of good faith apply beyond the narrow confines of *McClintock*'s unusual circumstances. More to the point, our statements in *McClintock* regarding law enforcement conduct that is "close enough to the line of validity" and the "objectively reasonable officer" were intended to expound upon, not supplant, the statutory requirement of objective good faith. In this sense, while *McClintock* aids our analysis of the instant issue by highlighting the sometimes-overlooked requirement of *objective* good faith, in reality it is merely a restatement of the requirements set forth by the Legislature in Article 38.23(b). Our holding today would be the same even without *McClintock* because we are bound to adhere to the statutory language. Given these considerations, we cannot agree that *McClintock* is inapplicable here or that the court of appeals erred by relying on it.

Applying the statute's requirement of objective good faith to the situation at hand, we conclude that no objectively-reasonable police officer would have believed that the warrant here was valid when it was knowingly obtained by an unsworn probable-cause affidavit. In fact, it was wholly unreasonable for any officer in Officer Bonner's shoes to believe that there was no need to attest to a probable-cause affidavit when: (1) the oath requirement has been a constitutional mandate for all law enforcement officers for well over a century; (2) the Texas Legislature has codified and repeatedly emphasized the oath requirement in the Code of Criminal Procedure; (3) this Court's opinions have consistently held that the oath requirement is critical to obtaining a search warrant; (4) law enforcement officers are taught in the police academy that they must swear to the truthfulness of their probable-cause affidavits before a magistrate or other qualified person;[11]

---

[11] Officer Bonner admitted that in the police academy he was trained about the oath requirement. He also testified that he was taught the Code of Criminal Procedure as well as U.S. and Texas constitutional requirements including those pertaining to search and seizure issues.

and (5) the forms used by Officer Bonner in this case for the probable-cause affidavit and search warrant both refer to the oath requirement and state that the documents were "verified" and/or "sworn before" a magistrate.[12]

The State's brief places great emphasis on Bonner's subjective belief that the warrant was valid at the time of its execution, but that is not the standard that the good-faith exception requires. An inquiry into Officer Bonner's subjective state of mind is only relevant to determining the circumstances under which he acted. It is wholly irrelevant when it comes to determining whether he acted in good faith as measured from the perspective of an objectively-reasonable officer under those same circumstances. Under the facts here, the court of appeals was correct in its assessment that, given how fundamental the oath requirement is, no objectively-reasonable officer could have believed that an oath was not required to support his probable-cause affidavit; therefore, an officer preparing such an affidavit could not have reasonably believed that the subsequent warrant was not tainted by this defect. *See Wheeler*, 573 S.W.3d at 446. This was not a mere procedural irregularity with respect to how the affidavit was sworn. It was not sworn at all. The complete

[12] As noted by the dissent, it is true that the magistrate also made a mistake in this case by signing the jurat and warrant even though she never administered the oath to Bonner. We agree with the dissent that, as a general matter, a law enforcement officer should be permitted to rely on a search warrant signed by a neutral magistrate and supported by probable cause without having to "second guess" the magistrate's determination. That principle, however, cannot apply to situations such as the instant one where an objectively-reasonable officer would have personal knowledge of a significant defect in the process used to obtain the warrant (here, the absence of an affidavit sworn under oath). Under those circumstances, even if the magistrate then mistakenly approves the warrant, the objectively-reasonable officer would still know of the underlying defect that ultimately renders the resulting warrant tainted. Such an officer is not being made to "second guess" the magistrate's approval of a warrant that he honestly and reasonably believes to be free of defects; rather, he simply is not permitted to rely on a warrant that he knows is tainted, regardless of the magistrate's approval. Thus, the instant situation is distinguishable from those in which the officer is wholly innocent and, unbeknownst to him, some flaw in the warrant process is discovered after the fact.

absence of this indispensable constitutional and statutory requirement is nowhere close to the line of valid law enforcement conduct that would bring this situation within the ambit of the good-faith exception. *See McClintock,* 541 S.W.3d at 73.

## III.    Conclusion

The court of appeals correctly held that the officer's conduct in submitting an unsworn probable-cause affidavit and then executing the subsequent search warrant was objectively unreasonable, such that the officer cannot be said to have acted in "objective good faith reliance" on the search warrant. TEX. CODE CRIM. PROC. art. 38.23(b). Therefore, we affirm the judgment of the court of appeals which reversed the trial court's ruling denying Appellant's motion to suppress.

Delivered: February 10, 2021

Publish