

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-24-00089-CR

The State of Texas, Appellant

v.

Bobbie Lee Lankford, Appellee

**On Appeal from the 327th District Court**
**El Paso County, Texas**
**Trial Court No. 20220D01216**

## SUBSTITUTE MEMORANDUM OPINION

We withdraw our May 27, 2025 opinion and judgment, and substitute the following opinion and corresponding judgment in their place. Appellee's motion for rehearing is denied.

The State appeals from the trial court's grant of Appellee Bobbie Lankford's pretrial motion to suppress evidence of the results of a forensic examination conducted on a cell phone

seized in his residence pursuant to a search warrant. In a single issue on appeal, the State maintains the trial court abused its discretion by granting the motion. Because we conclude that law enforcement acted in good faith in conducting the forensic examination, we reverse the trial court's order granting the motion and remand the cause to the trial court for further proceedings.

## I. BACKGROUND

Lankford was indicted in April 2022 and charged with one count of possession of child pornography. In August 2023, Lankford filed a generic motion to suppress evidence obtained during a search of his residence, claiming the evidence was seized without probable cause and without a valid search warrant in violation of his constitutional rights. After the State objected to the lack of specificity in the motion, the trial court held a hearing in February 2024, at which Lankford abandoned his claim that the search was conducted without probable cause and elaborated on his claim that the evidence was not legally obtained pursuant to a valid search warrant.

At the hearing on his suppression motion, the evidence established that law enforcement obtained two search warrants, both of which Lankford argued were invalid. We describe each warrant separately.

### A. Judge Haggerty's warrant

The first warrant was issued by Justice of the Peace Brian Haggerty on March 2, 2022, and authorized the search of Lankford's residence and the collection of electronic devices found at the residence.

At the suppression hearing, Luis Reyes, a detective with the El Paso Police Department who executed the affidavits for both warrants, testified that in 2022, he was assigned to the El Paso Police Department Crimes Against Children Unit. He recalled that he was contacted by the

2

Rainbow City Police Department in Alabama for assistance in obtaining a search warrant for Lankford's residence and an arrest warrant for Lankford. Reyes prepared the affidavit in support of the first search warrant for Lankford's residence, which was issued by Haggerty on March 2, 2022.

The affidavit, introduced in evidence at the hearing, stated that undercover agents from the police department had engaged in "an online chatting operation," in which they posed as a 13-year-old female and communicated with Lankford initially through a messaging application. According to the affidavit, Lankford sent sexual images through the application and thereafter texted the undercover detective utilizing a particular phone number, which a "check" revealed was "assigned" to Lankford. Lankford requested images from the undercover detective and informed the detective that other underage females had sent him such images. As a result of the chatting operation, Reyes believed Lankford possessed pornographic images of children on the described cell phone and other electronic devices. Reyes requested "a warrant that will authorize the search of said suspected place and party for said personal property, the seizure of the same, the forensic examination of the seized items to include any locked devices and the seizure of any pins/passwords/pattern/facial/fingerprints of any locked devices."

Reyes provided the affidavit to Haggerty, who testified at the hearing that, although he was not a licensed attorney, he believed he had the authority to issue the search warrant, and Reyes's affidavit provided sufficient probable cause for the search. Haggerty issued a warrant providing for the search of Lankford's residence and the seizure of the following:

> Personal Computer(s), computer hardware, software, optical disks, CD Rom's, micro SD cards, flash drives, hard drives, cellular phones, cameras, camcorders, and/ or any other means of recording and/or storing electronic data, text documents, text messages, videos, handwritten notes containing passwords to computer or cell phones, ownership information of cell phones and/or computer, and any printed

images depicting child pornography. To include the pins/passwords/pattern/facial/fingerprint locks for any of the electronic devices.

The warrant further stated that you are therefore "commanded to enter the suspected place described in said Affidavit and to there search for the personal property described in said Affidavit and to seize same and bring it before me and to arrest and bring before me each suspected party named in said Affidavit." Although the warrant did not expressly authorize a forensic examination of the electronic devices, as requested in Reyes's affidavit, the warrant stated that the "[a]ffidavit is here now made part hereof for all purposes."

Pursuant to Haggerty's warrant, several electronic devices were collected inside Lankford's residence, including a Cricket Alcatel cell phone IMEl:015320001136360 (the Cricket Alcatel), which Reyes provided to the police department's forensic lab for examination. Reyes expressed his belief that the forensic examination was conducted "under the authority of this search warrant." He recalled that the examination discovered pornographic images of children only on the seized Cricket Alcatel cell phone. Based on that finding, Lankford was charged with possession of child pornography in April 2022. No pornographic materials were found on the other devices.

**B. Judge Moody's warrant**

At the suppression hearing, Reyes recalled that almost two years later, and almost five months after Lankford filed his motion to suppress the evidence found on the Cricket Alcatel, he drafted a second affidavit. That affidavit, entered in evidence and dated January 16, 2024, relied on the same underlying facts regarding the "chatting operation" as set forth in his first affidavit but added facts regarding the prior forensic search of the Cricket Alcatel, which revealed pornographic images. According to the affidavit, the phone was still in the police department's custody, and Reyes was "seeking a secondary search warrant more in compliance with Article

4

18.0215 of the Texas Code of Criminal Procedure." Reyes recalled that he only sought a warrant to search the Critical Alcatel phone because it was the only one found to have images of child pornography on it.

The second search warrant was issued by District Court Judge William Moody on January 16, 2024, and was also entered in evidence at the hearing.[1] The warrant expressly authorized a forensic examination of the phone based on the information provided in Reyes's affidavit, which Moody expressly made a part of the warrant. Reyes recalled that the second forensic examination of the phone produced the same images as the first; it did not produce any new images.

### C. The parties' arguments at the suppression hearing

At the suppression hearing, with respect to the validity of the phone search in connection with the first warrant, Lankford contended: (1) the warrant did not authorize the forensic examination of any electronic devices to be seized during the search of his residence; and (2) even if it did, Haggerty, as a justice of the peace, did not have the authority under the Code of Criminal Procedure to authorize a forensic search of the devices. Lankford further argued that the second search warrant did not "cure[] the deficiencies" of the first search, since the second search duplicated the first search and produced the same evidence.[2] As well, he argued that by seeking the second, more specific warrant authorizing the forensic examination of the Cricket Alcatel, Reyes essentially recognized the deficiencies in the first warrant.

The State argued that the Code of Criminal Procedure authorizes any judge or magistrate, including a justice of the peace, to issue a search warrant to seize the items in question. The State

---

[1] Moody did not testify at the hearing.

[2] At the hearing, defense counsel argued that Texas law does not provide for an "inevitable discovery rule," such that the deficiencies in the first warrant could be overlooked. The State did not respond to that argument, and we do not discuss the argument given our conclusion that the evidence discovered in the first search was not subject to exclusion.

further argued that although the search warrant itself did not expressly authorize a forensic examination of the phone, the officer's affidavit did request it and the search warrant incorporated the affidavit by reference, thereby authorizing the examination. In addition, the State argued Reyes acted in good faith in directing the forensic department to conduct the search, bringing it within an exception to the exclusionary rule. Finally, the State explained that law enforcement sought the second search warrant "out of an abundance of caution" given Lankford's challenge to the first warrant but that it nevertheless believed the "first warrant [was] valid."

**D.    The trial court's findings of fact and conclusions of law**

Following the hearing, the trial court issued the following "Findings of Fact and Conclusions of Law on [Lankford's] Motion to Suppress Evidence."[3]

2.    Judge Brian Haggerty did not have legal authority to authorize the seizure of the [Cricket Alcatel] or any other cellphone collected by law enforcement on March 3, 2022.

3.    The cellphones, in particular the [Cricket Alcatel], were collected without a valid search warrant.

4.    The March 2, 2022[] search warrant was not compliant with the requirements of Texas Code of Criminal Procedure Section 18.0215.

5.    In addition, Judge Haggerty did not have legal authority to sign a search warrant under Texas Code of Criminal Procedure Section 18.0215.

6.    Therefore, the first forensic examination of the [Cricket Alcatel] and all other cell phones was conducted without a valid search warrant.

7.    The results of the first forensic examination of the [Cricket Alcatel] and all the other cellphones are therefore barred and suppressed as illegally obtained.

8.    The subsequent search warrant signed on January 16, 2024, by Judge William Moody was compliant with the requirements of Texas Code of Criminal Procedure Section 18.0215.

9.    However, because the results of both forensic examinations are consistent with each other, and the results of the first forensic examination are already

---

[3] The first conclusion addressed the existence of probable cause, which, as set forth above, is not at issue in this appeal.

6

suppressed, the results of the second forensic analysis are also barred and suppressed as illegally obtained.

The State filed a Notice of Appeal and certified "that jeopardy has not yet attached in this case, that the appeal is not taken for the purpose of delay, and that the evidence is of substantial importance to the case."[4]

## II. ISSUE ON APPEAL

In a single issue, the State contends the trial court erred in granting Lankford's motion to suppress, maintaining the first warrant was valid because (1) Judge Haggerty had the authority to issue the warrant to both seize and search the items described in Reyes's affidavit, (2) the warrant authorized the forensic examination of the electronic devices found at Lankford's residence because the warrant sought "images" of pornography and because it incorporated Reyes's affidavit requesting the forensic examination to produce those images, and (3) law enforcement acted in good faith by conducting the examination. In its reply brief, the State argued that even if the first search was unlawful, the second search was lawful, as the second search warrant was supported by a "distinct" and independent source of probable cause, as provided by Reyes's affidavit describing the reasons he believed Lankford possessed images of child pornography on the electronic devices to be seized in the search. And, the State argues, the second search was therefore "sufficiently attenuated" from any illegality in the first search, and any evidence obtained during that search should not be excluded.[5]

---

[4] The Texas Code of Criminal Procedure permits the State to appeal an order that "grants a motion to suppress evidence . . . if jeopardy has not attached" and "if the prosecuting attorney certifies" that "the evidence, confession, or admission is of substantial importance in the case." Tex. Code Crim. Proc. Ann. art. 44.01(a)(5).

[5] In its initial brief, the State referred to the second warrant as valid, but it did not raise its "attenuation" argument either in its initial brief or in the trial court.

7

We agree that the evidence obtained during the first search was not subject to exclusion, Hagerty had the authority to issue the warrant under the statutory scheme, and Reyes was acting in objective good faith when he collected the electronic devices and submitted them for forensic examination. We therefore do not address the legality of the second search.

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). "On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor." *Id.* "On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do *not* turn on an assessment of credibility and demeanor, on a de novo basis." *Id.* at 740–41.

We will sustain a trial court's ruling on a motion to suppress if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc). "This is so even if the trial judge gives the wrong reason for the decision." *Id.*

## IV. APPLICABLE LAW

The issuance of a search warrant is governed by Texas Code of Criminal Procedure Chapter 18. Article 18.01 defines a "search warrant" as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate or commanding him to search for and photograph a child and to deliver to the magistrate any of the film exposed pursuant to the order." Tex. Code Crim. Proc. Ann. art. 18.01(a). Justices of the Peace, such as Haggerty, are magistrates and therefore have the

8

authority to sign search warrants as authorized by Article 18.01(a). *See Foster v. State*, No. 08-22-00181-CR, 2023 WL 5732718, at *6 (Tex. App.—El Paso Sept. 5, 2023, pet. ref'd) (mem. op.) (citing Tex. Code Crim. Proc. Ann. art. 2.09, current version found at Tex. Code Crim. Proc. Ann. art. 2A.151(13) (providing that a justice of the peace is a magistrate for purposes of the Code of Criminal Procedure)). Under Article 18.02, a magistrate may issue a search warrant to search for and seize any number of items, including: a cellular telephone or other wireless communications device, subject to Article 18.0215; "any property the possession of which is prohibited by law"; and "implements or instruments used in the commission of a crime[.]" Tex. Code Crim. Proc. Ann. art. 18.02 (8),(9),(14).

Article 18.0215 provides: "A peace officer may not search a person's cellular telephone or other wireless communications device, pursuant to a lawful arrest of the person without obtaining a warrant under this article." Tex. Code Crim. Proc. Ann. art. 18.0215(a). It further provides that "[a] warrant under this article may be issued only by a judge, including a judge of a statutory county court, in the same judicial district as the site of: (1) the law enforcement agency that employs the peace officer, if the cellular telephone or other wireless communications device is in the officer's possession; or (2) the likely location of the telephone or device." *Id*. at 18.015(b). Finally, it provides that: "[a] judge may issue a warrant under this article only on the [written and sworn] application of a peace officer," which must include:

> (1) [] the name, department, agency, and address of the applicant;
>
> (2) [] the cellular telephone or other wireless communications device to be searched;
>
> (3) [] the name of the owner or possessor of the telephone or device to be searched;

9

(4) [] the judicial district in which: (A) the law enforcement agency that employs the peace officer is located, if the telephone or device is in the officer's possession; or (B) the telephone or device is likely to be located; and

(5) [] the facts and circumstances that provide the applicant with probable cause to believe that: (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A).

*Id.* at 18.0215(c) (1–5).

The Code also contains a catch-all subsection in Article 18.02(a)(10) providing for search warrants to seize items not enumerated in other portions of the Article, allowing law enforcement to search more generally for and seize "property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." *Id.* art. 18.02(a)(10); *see also State v. Young*, 8 S.W.3d 695, 698 (Tex. App.—Fort Worth 1999, no pet.) (recognizing that "article 18.02(10) is a catch-all section that applies only when the other articles do not"); *Scott v. State*, 868 S.W.2d 430, 432 (Tex. App.—Waco 1994, pet. ref'd) (referring to Article 18.02(a)(10) as a "catch-all" provision to search for items not otherwise designated in Article 18.02). A search warrant issued under subsection 18.02 (a)(10) is referred to as an "evidentiary warrant" or "mere evidentiary warrant." *Parker v. State*, 663 S.W.3d 766, 772–73 (Tex. Crim. App. 2022); *Becerra v. State*, No. 13-20-00055-CR, 2021 WL 2584394, at *3 (Tex. App.—Corpus Christi–Edinburg June 24, 2021, no pet.) (mem. op., not designated for publication). Among other requirements, an evidentiary warrant may only be issued by

> a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals, including the presiding judge, a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court.

Tex. Code Crim. Proc. Ann. art. 18.01(c); *see also Scott*, 868 S.W.2d at 432 ("Only judges of municipal courts of record licensed as attorneys, statutory county or district judges, or judges from the Court of Criminal Appeals or Supreme Court may issue evidentiary warrants under article 18.02(10)").

## IV. ANALYSIS

The trial court concluded that Haggerty did not have the "legal authority" to authorize the seizure of the Cricket Alcatel or any other cell phones collected by law enforcement on March 3, 2022. On appeal, the State correctly points out—and Lankford appears to agree—that this finding was incorrect as, aside from warrants issued under Article 18.02(10), Article 18.01 allows any "magistrate" to issue a search warrant to collect any enumerated items, including "any property the possession of which is prohibited by law" and "implements or instruments used in the commission of a crime." Tex. Code Crim. Proc. Ann. art. 18.02(8)(9). And Lankford appears to concede that his cell phone could be considered an "instrument[]used in the commission of a crime[]" pursuant to Article 18.02(9), such that Haggerty, as a justice of the peace, could issue a warrant to seize the phone pursuant to Tex. Code Crim. Proc. Ann. art. 18.02 (8), (9). We also agree.

Where the parties diverge is on three issues: first, whether Haggerty had the legal authority to issue a warrant that provided for a forensic examination of the cell phones seized in the search; second, whether Judge Haggerty's warrant did in fact authorize such a search; and third, whether Reyes had an objective good faith belief that the warrant authorized him to submit the electronic devices collected in Lankford's home for a forensic examination.

We conclude that Haggerty had the authority to issue the warrant under the statutory scheme, and that regardless of whether the warrant expressly authorized the forensic examination

11

of the Cricket Alcatel, Reyes had a good faith belief that he was authorized to conduct the examination.

## A. Haggerty had the authority to issue the warrant

Article 18.02(a)(14) authorizes any magistrate to issue warrants to search for and seize "a cellular telephone or other wireless communications device, subject to Article 18.0215." Tex. Code Crim. Proc. Ann. art. 18.02(14). In turn, Article 18.0215 states: "A peace officer may not search a person's cellular telephone or other wireless communications device, pursuant to a lawful arrest of the person without obtaining a warrant under this article." *Id*. at art. 18.0215(a). Lankford acknowledges that Haggerty had the authority as a magistrate to order the seizure of the cell phone. However, he contends that Haggerty did not have the authority to issue a warrant under Article 18.0215, maintaining that only a judge who is a "licensed attorney" may issue such a warrant, and that Haggerty, who was admittedly not a licensed attorney, therefore lacked authority.

As a preliminary matter, we note that the parties disagree on whether Article 18.0215 governs the warrant. Lankford contends Article 18.0215 applies to all warrants for the forensic examination of a cell phone.[6] The State, however, contends that, based on the statute's plain language, Article 18.0215 only applies to cell phone searches in cases in which the defendant is under "lawful arrest." In turn, the State argues that the search of Lankford's cell phone was authorized under Article 18.02, allowing magistrates of any level to issue non-evidentiary search

---

[6] In its briefing, Lankford cites to our sister court's opinion—which has since been reversed on other grounds—in which the court held that a "common sense understanding" of Article 18.0215, demonstrates that it applies in any situation in which the contents of a cell phone are to be forensically examined, "regardless of how it was seized." *State v. Rodriguez*, No. 04-22-00727-CR, 2024 WL 1642931, at *5 (Tex. App.—San Antonio Apr. 17, 2024), rev'd and remanded, No. PD-0377-24, 2025 WL 2158256 (Tex. Crim. App. July 30, 2025). Although the Court of Criminal Appeals was asked to consider that issue in the State's petition for discretionary review, the court declined to do so and instead resolved the appeal on other grounds. *See State v. Rodriguez*, No. PD-0377-24, 2025 WL 2158256, at *2–3, n.1 (Tex. Crim. App. July 30, 2025) (not designated for publication).

warrants to search and seize property used in the commission of a crime. In the alternative, the State contends that even if Article 18.0215 applies, it allows any "judge" to sign the warrant for the forensic examination of a cell phone, to include justices of the peace. We find the State's alternative argument persuasive.

Even assuming that Article 18.0215 applies to Haggerty's warrant, there is nothing in that statute to support Lankford's argument that only a judge who is a licensed attorney has the authority to issue a warrant for the forensic search of a cell phone. Article 18.0215 provides that the warrant must be issued by a "judge" who is located in "the same judicial district as the site" of "the likely location of the telephone or device" if it is not in law enforcement's possession. Tex. Code Crim. Proc. Ann. art. 18.0215(b) ("A warrant under this article may be issued only by a judge, including a judge of a statutory county court, in the same judicial district as the site of: (1) the law enforcement agency that employs the peace officer, if the cellular telephone or other wireless communications device is in the officer's possession; or (2) the likely location of the telephone or device."). Other than this geographic restriction, which is not at issue here, the Article does not restrict or limit the type of "judge" authorized to issue an Article 18.025 warrant. Lankford does not suggest that a justice of the peace cannot be considered a "judge," nor do we. *See* Tex. Const. art. V, § 1 (designating a justice of the peace court as one of the several levels of courts having "judicial power" in the State of Texas); Tex. Const. art. V, § 19 ("Justice of the peace courts shall have original jurisdiction in criminal matters of misdemeanor cases punishable by fine only, exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less, and such other jurisdiction as may be provided by law.").

In addition, we find it significant that despite limiting the type of judges who may sign an Article 18.02(10) evidentiary warrant to those who are licensed attorneys, the Legislature made no

attempt to impose this limitation on judges authorized to sign Article 18.0215 warrants. Therefore, we may infer that the Legislature chose not to limit the type of judges authorized to issue Article 18.0215 warrants. *See generally Navarro v. State*, 26 S.W.3d 436, 447 (Tex. Crim. App. 2025) ("[W]hen the legislature has carefully employed a term in one section of a statute and excluded it within another, it should not be implied where excluded."); *see also Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 856 (Tex. 2024) (where the Legislature provided restrictions on exemptions in one section of the Tax Code, it "certainly" knew how to do so, but "made the decision not to" in another section); *see generally Ex parte Kibler*, 664 S.W.3d 220, 230 (Tex. Crim. App. 2022) (recognizing that "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it").

Finally, we note that the Court of Criminal Appeals has not seen fit to distinguish between levels of judges who are authorized to issue warrants to seize and search cell phones pursuant to Article 18.0215. To the contrary, in *State v. Baldwin*, the court repeatedly referred to the requirements imposed by Article 18.0215 on "magistrates" (which includes justices of the peace) to issue such warrants. 664 S.W.3d 122, 131 (Tex. Crim. App. 2022).

We therefore conclude that Haggerty had the authority to issue the warrant as a magistrate judge under the provisions of Article 18.02 (8), (9), (14), or Article 18.0215.

### B. Whether Reyes had a good-faith belief that the warrant authorized the forensic examination of the Cricket Alcatel

Lankford next contends that even if Haggerty had the authority to issue a warrant for the forensic search of his cell phone, the warrant itself did not authorize such a search, as it only authorized the seizure of the electronic devices found at Lankford's residence, and not a search of their contents. He further maintains the warrant was deficient, as neither the warrant nor Reyes's

supporting affidavit identified the particular phone to be searched. For the reasons explained below, we conclude that regardless of any such deficiencies in the warrant, Reyes had an objective good-faith belief that the warrant authorized the forensic search of the electronic devices seized in in the search, including the Cricket Alcatel, which contained the images of child pornography Lankford seeks to suppress.

### (1) The law governing the good-faith exception

The United States Supreme Court has recognized that even if a warrant issued by a detached and neutral magistrate is later deemed to be invalid, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objective good-faith and reasonable reliance on the warrant. *United States v. Leon*, 468 U.S. 897, 920–22 (1984). As the Court recognized, the rationale for the exclusionary rule is to deter police misconduct; therefore, when an officer acts in objective good faith in conducting a search in reliance on a warrant, there is "nothing to deter." *Id.* at 921. However, the officer's reliance on a defective warrant must be objectively reasonable, and law enforcement is not entitled to the good-faith exception when, "depending on the circumstances of the particular case, a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

The Legislature has statutorily recognized its own good-faith exception to the exclusionary rule, found in Article 38.23 of the Code of Criminal Procedure, which provides that although no evidence obtained in violation of the constitutions or laws of the United States or Texas may be admitted at trial in a criminal case, it is an exception to the exclusionary rule "that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." Tex. Code Crim. Proc. Ann.

art. 38.23(a)(b). Mirroring the requirements set forth by the U.S. Supreme Court, the Texas Court of Criminal Appeals has held that "[t]he exception plainly requires objective, rather than subjective, good-faith reliance upon a search warrant." *Wheeler v. State*, 616 S.W.3d 858, 863 (Tex. Crim. App. 2021) (holding that no "objectively-reasonable officer would execute a search warrant knowing that it was procured through an unsworn probable-cause affidavit"). Consistent with the statutory language, courts have recognized that to establish good-faith reliance on a warrant, it must have been issued by a neutral magistrate and based on probable cause, i.e., it must be "facially valid" in that sense. *State v. Arellano*, 600 S.W.3d 53, 58–59 (Tex. Crim. App. 2020) (citing *McClintock v. State*, 541 S.W.3d 63, 67 (Tex. Crim. App. 2017)).

The State has the burden to demonstrate the applicability of the good-faith exception. *Wheeler v. State*, 573 S.W.3d 437, 442 (Tex. App.—Fort Worth 2019), aff'd, 616 S.W.3d 858 (Tex. Crim. App. 2021). We review whether the good-faith exception applies de novo. *Wheeler*, 573 S.W.3d at 442 (recognizing that the question of whether the good-faith exception to the exclusionary rule applies is a question of statutory construction, which a court of appeals reviews de novo) (citing *McClintock*, 541 S.W.3d at 67).

Assessing whether officers acted in objective good-faith reliance on a warrant is judged in terms of how close their actions were "to the line of validity." *See McClintock*, 541 S.W.3d at 73–74. Accordingly, to determine whether Reyes acted in objective good faith in submitting the electronic devices seized in the search of Lankford's residence for a forensic examination, we must first examine the law surrounding cell phone searches and determine how "close to the line" Reyes's actions were under the applicable law.

16

### (2) The doctrine of incorporation by reference

As a preliminary matter, we note that Lankford does not dispute that Haggerty was a neutral magistrate. Nor does he dispute that Reyes's affidavit set forth sufficient facts to establish probable cause to believe Lankford had committed an offense and the electronic devices he sought in the search had been used to commit the offense. Lankford, however, argues that even if Haggerty had the authority to order a forensic search of the electronic devices seized in the home, the warrant he issued did not do so. To the contrary, he points out that the warrant only specified that the officer executing the search was to "bring" the seized property, including the cell phones and other electronic devices found in the search, "before" the judge. It did not expressly authorize law enforcement to conduct a forensic examination of any of the seized devices.

We find it significant that, as Lankford acknowledges, even though Haggerty's warrant itself did not expressly authorize the forensic examination of the phone, Reyes's affidavit, which was incorporated by reference into the warrant, expressly requested such an examination. In general, "[w]hen a search warrant affidavit is incorporated into a search warrant, it becomes a part of, and can be used to aid the description in, the search warrant." *See Patterson v. State*, 663 S.W.3d 155, 158 (Tex. Crim. App. 2022) (citing *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990) (citing *Phenix v. State*, 488 S.W.2d 759 (Tex. Crim. App. 1972) (holding that when a search warrant incorporates the supporting affidavit and the affidavit describes the place to be searched with particularity, this is sufficient to make the description of the place to be searched part of the warrant)); *see also Wiseman v. State*, No. 12-23-00198-CR, 2024 WL 3533081, at *2 (Tex. App.—Tyler July 24, 2024, pet. ref'd) (mem. op., not designated for publication) (recognizing same); *Taylor v. State*, No. 03-19-00077-CR, 2021 WL 476657, at *7 (Tex. App.—Austin Feb. 10, 2021, pet. ref'd) (mem. op.) (same).

Moreover, as the Court of Criminal Appeals has recognized, when an affidavit is incorporated into the warrant, "[i]t is well settled that . . . these documents should be considered together as defining the place to be searched, but the description in the affidavit controls over the language in the warrant itself." *Long v. State*, 132 S.W.3d 443, 446, n. 11 (Tex. Crim. App. 2004) (holding that the "specific description of the business establishment to be searched as described in the present affidavit controls over the less precise description in the warrant itself") (citing *Riojas v. State*, 530 S.W.2d 298, 303 (Tex. Crim. App. 1975) (finding search invalid where the search of the suspect's property extended beyond the description of the search given in both the affidavit and the warrant)).

Thus, when there are conflicts regarding the description of the place to be searched in the affidavit and the warrant itself, courts have held that—utilizing a common sense approach—the affidavit may be examined in determining the scope of the search intended by the magistrate in issuing the warrant. *See, e.g.*, *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976) (where warrant authorized a search of the suspected premises and to "seize same," a "common sense" interpretation of the warrant, guided by the request in the affidavit to seize any marijuana found in the premises, controlled) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965) (recognizing that once probable cause is established for a search, "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner")).[7]

---

[7] *See also Taylor v. State*, No. 03-19-00077-CR, 2021 WL 476657, at *7 (Tex. App.—Austin Feb. 10, 2021, pet. ref'd) (mem. op., not designated for publication) (where affidavit described with particularity that a search was to be conducted of the appellant's home and was incorporated by reference into the warrant, court concluded that "the search warrant, despite the mistaken description of the place to be searched, authorized the search of appellant's home") (citing *Phenix v. State*, 488 S.W.2d 759, 764 (Tex. Crim. App. 1972) (holding that a search warrant's incorporation of an affidavit describing the place to be searched with particularity "would be sufficient to make the description of the place to be searched a part of the warrant itself")). As Justice Newell explained in his concurrence in *Crider v. State*, "when the search warrant affidavit incorporated by reference in the search warrant reveals that the affiant sought

As for Article 18.0215, we find it significant that there are no express requirements as to the language that must be included in the warrant itself. Instead, the statute focuses exclusively on what the officer's supporting affidavit must include, among other things, that the affidavit "state the facts and circumstances that provide the applicant with probable cause to believe that: (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." Tex. Code Crim. Proc. Ann. art. 18.0215(c)(5)(A)(B); *see also Llanas v. State*, 711 S.W.3d 766, 775 (Tex. App.—Austin 2025, no pet.) (confining court's review to the "four corners of the affidavit" in determining whether there was probable cause to believe that searching defendant's cell phone was "likely to produce evidence in the investigation" of an offense) (citing Tex. Code Crim. Proc. art. 18.0215(c)(5); *Baldwin*, 664 S.W.3d at 131–32 (discussing requirements of an affidavit to support a forensic search of a cell phone pursuant to Article 18.0215)).

Thus, in a similar circumstance as presented here, our sister court held that although a warrant only authorized the seizure of certain personal property in a suspect's residence, including his cell phone, the search of the contents of the phone was nevertheless lawful because the officer's supporting affidavit—which was incorporated by reference into the warrant—requested the search. *See Ghanbari v. State*, No. 05-17-00257-CR, 2019 WL 1649455, at *12–13 (Tex. App.—Dallas Apr. 17, 2019, pet. ref'd) (mem. op., not designated for publication). In that case, the law enforcement officer's affidavit described various items to be seized during a search of the defendant's residence, to include a particular cell phone believed to contain evidence of a robbery,

a warrant that authorized the search for or seizure of evidence beyond the scope of the warrant itself, the scope of the warrant is judged by both the affidavit and the search warrant." 607 S.W.3d 305, 310 (Tex. Crim. App. 2020) (Newell, J. concurring) (where search warrant only authorized the extraction of the defendant's blood in DUI case and not its chemical testing, court should read the warrant and affidavit together in a common sense manner to allow for a reasonable inference that the magistrate intended for the chemical testing of the extracted blood).

19

and further requested a forensic examination of the phone, specifically describing the information to be extracted. *Id*. at \*13. Recognizing that the warrant expressly incorporated the affidavit by reference, the court of appeals held that the trial court did not err by concluding "the warrant authorized the extraction of electronically stored information" from the phone identified in the affidavit. *Id*. at \*13 (citing *Faulkner*, 537 S.W.2d at 744).

As set forth above, Lankford appears to concede that that Reyes's affidavit can be read in conjunction with Haggerty's warrant to determine its scope, and that the affidavit expressly sought a forensic examination of the electronic devices seized in the search. Lankford, however, contends that regardless of whether we consider the two documents together, we should still decline to construe the warrant as authorizing the forensic search of the contents of the phones found in his residence, given the warrant's express and limiting language directing the searching officers to seize the "property described in [Reyes's] affidavit" and "bring it before [him]."

But even if we were to agree with Lankford on this point, we agree with the State that, given the affidavit's incorporation by reference into the warrant, Reyes had a good-faith objective belief that the warrant authorized him to conduct the forensic examination of the electronic devices seized in the search of Lankford's home. Reyes's affidavit repeatedly referred to the "images of child pornography" he believed would be found on the devices described in the affidavit. Reyes further made it clear that the images, rather than the devices themselves, were the focus of law enforcement's investigation.[8] In other words, Reyes's affidavit made it clear that the only purpose for seizing the devices in question was to determine if they contained child pornography images, and he expressly sought a forensic examination of those devices for that reason. Reyes thus could

---

[8] The affidavit used the term "images" no less than ten times.

have believed, in objective good faith, that because Haggerty found probable cause to seize the devices, by necessary implication, Haggerty also found probable cause to forensically examine the devices, as the very purpose of the search—to determine if there were any child pornography images on the devices—could only be accomplished by such an examination.[9] Accordingly, we conclude that Reyes's actions in submitting the seized electronic devices for forensic examination in reliance on the facts and circumstances set forth in his affidavit, even if in error, was so "close to the line of validity" that his actions in doing so were in objective good faith. *McClintock*, 541 S.W.3d at 73–74.[10]

### (3) The particularity requirement

Lankford maintains that even if Reyes was entitled to rely on the affidavit in determining the scope of the search, his search of the cell phones from Lankford's residence violated the specific requirements for the forensic search of cell phones. Lankford points us to the Article 18.0215 requirement that an affidavit in support of a search warrant to forensically examine a cell phone identify the particular phone to be searched as well as its owner. Tex. Code Crim. Proc. Ann. art. 18.0215(c)(2)(3). And, he contends, neither Reyes's affidavit nor the warrant itself provided a sufficient description of the *particular* phone to be searched, i.e., it did not identify the

---

[9] *See generally Crider*, 607 S.W.3d at 307 (holding that a "neutral magistrate who has approved a search warrant for the extraction of a blood sample, based upon a showing of probable cause to believe that a suspect has committed the offense of driving while intoxicated, has necessarily also made a finding of probable cause that justifies chemical testing of that same blood. Indeed, that is the purpose of the blood extraction.").

[10] We also disagree with Lankford's argument that Reyes did not act in good faith because he requested a separate search warrant to conduct a second forensic examination two years later, which Lankford contends demonstrated that he knew that Haggerty's warrant was insufficient to authorize the forensic search. According to Lankford, Reyes "admitted" in his second affidavit that he did not act in good faith in obtaining the forensic examination of the phone. But in fact, Reyes expressly stated in his second affidavit that he prepared his first affidavit in "good faith" to assist the Rainbow City Police Department in obtaining evidence to secure Lankford's arrest. Reyes further stated that he relied on Haggerty's warrant in seizing and searching the electronic devices, which led to the discovery of child pornography, but that he was seeking a "secondary search warrant more in compliance with Article 18.0215 of the Texas Code of Criminal Procedure."

Cricket Alcatel as one of the phones to be forensically examined, nor did it identify its owner. Lankford argues the warrant was invalid for that reason alone. Once again, however, we conclude that—even if we were to assume Article 18.0215 applies to the search—Reyes had an objective good faith belief that his affidavit set forth sufficient identifying facts and circumstances to authorize the forensic examination of the cell phones found in Lankford's residence.

In general, all search warrants are subject to the "particularity" requirement imposed by the United States Constitution, which requires law enforcement to describe the place or item to be searched with sufficient particularity to apprise the officers conducting the search regarding what places they are entitled to search and what items they are entitled to seize. *See Patterson*, 663 S.W.3d at 159 ("The particularity requirement is satisfied when an incorporated affidavit is 'sufficiently specific to apprise the officers of where they were to conduct the searches.'"). The "constitutional objectives" of this requirement include:

> (1) ensuring that the officer searches the right place; (2) confirming that probable cause is, in fact, established for the place described in the warrant; (3) limiting the officer's discretion and narrowing the scope of his search; (4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and (5) informing the owner of the officer's authority to search that specific location.

*Bonds v. State*, 403 S.W.3d 867, 874−75 (Tex. Crim. App. 2013).

In the context of cell phone searches, the particularity requirement is aimed at ensuring that law enforcement does not search a person's cell phone—which contains a host of personal information—based solely on a suspicion that the person has committed a crime, without any evidence to suggest that the phone was used in the commission of a crime or that a forensic examination of the phone is likely to produce evidence in the investigation of certain criminal activity. *See Stocker v. State*, 693 S.W.3d 385, 388 (Tex. Crim. App. 2024) (recognizing that an

affidavit in support of a cell phone search must state facts to establish "probable cause to believe that . . . searching the telephone . . . is likely to produce evidence in the investigation of" certain criminal activity) (citing Tex. Code Crim. Proc. art. 18.0215(c)(5)(B) (affidavit for cell phone search must establish that: "(A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A).")); *see also Riley v. California*, 573 U.S. 373, 393 (2014) (recognizing that because "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse," a search warrant based on probable cause is necessary to conduct a search of a suspect's cell phone). In other words, when applied to cell phone searches, the protections of the particularity requirement are geared toward ensuring that a person's cell phone is not forensically searched simply based on the suspect's ownership of the phone; instead, any such search must be supported by probable cause to believe that the search will produce evidence in the investigation of an offense. *Id*. And the protections further extend to limit the search of a phone's contents for evidence of a specific offense, preventing law enforcement form "rummaging" through the phone's contents. *See Villegas v. State*, No. 04-22-00688-CR, 2023 WL 8103183, at *3 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op., not designated for publication) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (recognizing that "[t]he particularity requirement is intended to protect people from 'general, exploratory rummaging in a person's belongings'"); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (recognizing that the particularity requirement is to ensure that a search conducted by law enforcement be "carefully tailored to its justifications")).

Here, Reyes's affidavit was sufficient to ensure that the search was conducted in accordance with those protections. Reyes expressly requested a "forensic examination of the seized

23

items," including any cell phones found in Lankford's residence, based on his belief that they contained evidence of a crime, i.e., possession of child pornography, in light of the Rainbow City undercover detective's chatting operation. Moreover, Reyes's affidavit specified that a particular cell phone, identified by a phone number believed to be assigned to Lankford, had been used by Lankford during the chatting operation to transmit messages and sexual images. We recognize that the record before us does not clearly establish that the number set forth in Reyes's affidavit corresponded to the number assigned to the Cricket Alcatel that was ultimately found to contain the child-pornography images Lankford seeks to suppress. However, this does not negate the fact that the recitations in Reyes's affidavit nevertheless clearly provided probable cause to believe Lankford had used a cell phone during the chatting operation, had encouraged the undercover detective to send him sexual images of her to his phone, and had informed the detective that other underage females sent him such images.

It is therefore clear that law enforcement did not search the cell phones found in Lankford's residence simply because Lankford was a suspect in a crime who happened to own the devices, but because they had probable cause to believe they contained images of child pornography. In addition, Reyes's affidavit sufficiently limited the requested search of the cell phones to finding those images, thereby preventing a general "rummaging" through Lankford's phone or other devices. Accordingly, regardless of any lack of specificity in the description of the phones to be seized in the search, or their ownership, we agree with the State that Reyes had an objective good-faith belief that his affidavit provided sufficient detail to authorize the forensic search of the cell phones found in Lankford's residence for the limited purpose of determining if they contained the suspected images. *See Villegas*, 2023 WL 8103183, at *4 (concluding that even if law enforcement's affidavit lacked particularity, officers acted in good faith in conducting a forensic

24

examination of a cell phone based on their belief that it contained sexual images of a child victim of sexual abuse, where there was probable cause to belief the phone contained images of the offense).

Because we conclude that Reyes acted in objective good faith in forensically examining the cell phones found in Lankford's residence, excluding the evidence found during the examinations "would not serve the underling purpose of the exclusionary rule," which is to prevent "police from knowingly violating the Constitution." *See United States v. Russian*, 848 F.3d 1239, 1246–48 (10th Cir. 2017) (concluding that law enforcement officer who executed an affidavit seeking to seize and forensically examine a cell phone had a good-faith belief that he was entitled to conduct the examination and did so in accordance with his affidavit, despite invalidity of the warrant, where the exclusion of the evidence would not serve the purposes of the exclusionary rule); *see also Villegas*, 2023 WL 8103183, at *4 (recognizing that the Texas exclusionary rule did not apply to exclude evidence of forensic search of cell phone "when the challenged 'evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.'") (citing Tex. Code Crim. Proc. art. 38.23(b)).

We therefore hold that the trial court erred in determining that results of the "first forensic examination of the [Cricket Alcatel] and all other cell phones" should be suppressed. Based on this conclusion, we need not reach the State's argument regarding the validity of the second search. The State's sole issue on appeal is sustained.

## V.  CONCLUSION

We reverse the trial court's order granting the motion to suppress the results of the forensic examination conducted on the Cricket Alcatel pursuant to the search warrant issued by Haggerty on March 2, 2022. We remand the cause to the trial court for further proceedings.

25

LISA J. SOTO, Justice

February 12, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)